You may proceed, counsel. My name is Dan Worker. I represent Illinois Farmers Insurance Company. I have with me today a representative of the insurance company, Mike Mann. On appeal in this case, we're asking the court to look at two issues, whether the notice of appeal was timely filed in this case, and the second issue, if the court decides that it was, was whether or not farmers' definition of insured person violates the Illinois financial responsibility law by limiting coverage for classification of risk for commercial businesses or employers. I'd like to address the notice of appeal issue first. The record before this court establishes that the notice of appeal was filed on June 20, 2006, four days after the notice was due. Farmers moved to dismiss the appeal as untimely. That motion was granted by the appellate court. Secura sought reconsideration of that order and sought to supplement the record with a letter dated June 16, 2006, indicating that there was a notice sent to the circuit court of DuPage County with its notice of filing and notice of appeal. The court withdrew the mandate and considered the response that farmers filed in the case in chief, and basically reversed the order and found that the notice of appeal was timely filed. The court's decision was based on its interpretation of Rule 12b-3, and we believe that the court's interpretation of 12b-3 is incorrect in this case. Under the rules, Illinois Supreme Court Rule 373 allows the notice of appeal to be filed by mail with the circuit court of the clerk of DuPage County if certain requirements are met. And those requirements are set forth in Illinois Supreme Court Rule 12b-3. There's three requirements set forth in that rule. A certification must be made by the attorney of record or any other person by affidavit that actually mails the notice to the court, to the circuit court, in order for the notice of mailing to constitute filing. And that wasn't done in this case. In addition, the notice must contain, the notice of mailing to the circuit court of DuPage County must contain three requirements. The time and place of mailing of that notice to the clerk, the compliance with regard to the complete address on the envelope, and the fact that it was postage prepaid. Now, in looking at compliance issues, the Second District Appellate Court looked at the notice of filing in this case, which is 445 in the record, which is a notice of filing that was sent to counsel for farmers, basically indicating that on June 16, 2006, that the attorney for Secura filed the notice of appeal with the circuit court of DuPage County, which was not the case. The certification contained within the notice of filing certifies that this notice of filing was sent to the attorney of record in a prepaid envelope with the properly addressed to the counsel of record. Not that the record was sent to the circuit court of DuPage County. Therefore, none of the requirements of 12B3 were met with regard to the notice of filing sent to the circuit court of DuPage County. If we find that the notice was untimely, do we have to reach the exception issue? We would ask the court to reach the exception issue, because it's an important issue that affects a number of cases that are currently pending before the courts in the circuit courts right now waiting for a decision on that issue. To answer your question, no. If you decide the notice of appeal was untimely, just as in the Roth decision before this court, they'd never reach the issue of whether or not the exclusion in that case was valid. Because there would have been no jurisdiction in the appellate court to address the issue. That is absolutely correct. Is there any way to know from the filings that are presently before us with the date that the, if mailed, the date that the, whatever is maintained as a certification was mailed? No, and that's exactly what the problem with the letter that we have that was used to supplement the record. All we have with regard to the supplementation that was made by SECURA is a letter that is dated June 16, 2006. There is no certification within that letter that indicates that it was actually mailed on that date, who mailed the letter, because the Rule 12b-3 is pretty clear, that it has to be certified or attested to that either the attorney himself mailed the notice, or some other person by affidavit has to attest that they actually placed the notice in the mailbox and sent it to the clerk themselves. And wouldn't the key be the date that it was sent as well? No, the key is the date that constitutes the date of filing under 12b-3. And it is that attestation of mailing the certification by the attorney under oath or other person by affidavit that attests that it was in fact done. Now, 12b-3 under Rule 373 gives a relaxed standard that allows an attorney the convenience of mailing in his notice of appeal rather than physically attending to the process. And in order to avail oneself to that relaxed standard, but at the same time to give credibility to the process and certainty on the date of notice, similar to a file stamp copy, the courts under the Illinois Supreme Court rules are requiring a certification by either the attorney themselves or an affidavit by a non-attorney that the act actually occurred. Now, the question is, does that come into play at all under your argument with regard to jurisdiction? No, and the standard switching to the opposing party in the case I would think really is improper. Harmless error and prejudice should not be jurisdictional. Either the notice was timely filed and the rules were strictly complied with, and I should mention that the appellate court should not have  Do you agree with the appellate court that the doctrine of harmless error applies to some of the Supreme Court rules? To some of the rules, but not to the timely notice of appeal, because I believe in that circumstance this Court has set that rule for setting jurisdiction of what cases the appellate courts can hear. I would argue that that rule can only be changed by the appellate court, can only be changed by this Court. What about when we do know the appeal was filed on, what was it, the 20th? Yes. June the 20th. That's certainly consistent with a mailing on the 16th, is it not? We have no way to tell, Your Honor. I mean, in terms of the amount of time that it took to get to the mail. So that's not a proper consideration? I believe not. I believe that just like a file stamp copy of a pleading to establish when it in fact occurred, the simple verification of a certification by an attorney or an affidavit by a non-attorney would be sufficient to establish that fact. If you're going to avail yourself to a relaxed rule of mailing rather than filing, you should comply strictly with that rule. Mr. Worker, is there no notice of appeal? There is a notice of appeal in the file, right? There is a notice of appeal in the file. But there's no certificate of service or proof of service with that separate document? That is correct. Okay. Now, when you go back to the other document, the one that you referred to earlier, I think it's on record page 445. Correct. It's the notice of filing, and then beneath that, it has separately labeled notice of appeal. That is correct. Okay. Now, here's my question. Based on those two representations on that sheet, when you go to the certificate of service signed by the attorney in the next page, he uses the phrase, again, this is a certificate of service, that I certify a copy of the above stated documents. Does that refer to the filing of two documents by mail? No. What it certifies, and if you read the certification of service, this is exactly our point. Right. It certifies that he served a copy of those documents to the attorney identified on the front, which is the Council of Farmers, by sending it in the mail to the Attorney for Farmers, to all Council of Record on that day. There is no certification that he, in fact, mailed these documents to the Circuit Court of DuPage County. I got you. So you're saying that this does cover the certificate of service for the mailing of those documents, service of the documents to the other side, but doesn't cover that it was actually put in the mail to be filed with the circuit clerk? Correct. So if you look at compliance with 12B3, the Court took great liberty when it ruled that there was substantial compliance with that rule. There was absolutely no compliance with the rule showing any certified mailing, certification by an attorney or anyone under oath, that that notice of appeal was, in fact, mailed to the Circuit Court of DuPage County on that day. In the event the court finds that the notice was appropriate and bestowed jurisdiction upon the appellate court, I'd like to address the coverage issue involved in this case. Farmers, under its personal automobile policy, seeks to exclude a classification of risk for employers under its personal automobile policy. The appellate court and Secura argue that our limitation clause in the definition of an insured person for excluding this classification of risk for employers violates the Illinois financial responsibility law. We believe that the provision is consistent with this court's holding in progressive, which recognizes the ability of insurance companies to limit or exclude risk even for people protected or persons protected under that act. Last time I was arguing before this court under the Illinois financial responsibility limit in State Farm versus Farmers, the issue in that case is whether or not we had to provide identical coverage from the named insured to the permissive drivers. And in that case, State Farm argued that we had to provide identical coverage to permissive users in this court. Held no. Under that statute, all we had to do is provide coverage to the permissive driver and allowed our step-down clause to be valid and enforceable in Illinois. The issue is somewhat similar in this case. Farmers is trying to exclude the commercial risk of employers under their policy. What they do is they accept the risk of coverage for their own named insured if they're the employer. And they exclude all other employers under their policy. In this case, the appellate court's reasoning is flawed for a number of reasons. First, their reasoning is that farmers policy improperly discriminates between the named insured and the permissive driver. That's not the case under the facts and circumstances of this case. In Progressive, this court stated that these exclusions and these clauses should be looked at under the facts and circumstances of each case. Under the facts and circumstances of this case, the permissive driver's employer was not covered. The exception to our definition of insured person did not apply because the named insured was not the employer. Here, if the named insured's employer was B&A Automotive, as it was for the permissive driver, that employer would still have no coverage. And therefore, the named insured and the permissive driver under the facts of this case would be treated exactly the same for coverage. The operation of the provision in this case would never, under any factual scenario, create a disparity between the named insured and the permissive driver. Wherever the named insured has coverage under the policy, the permissive driver also has coverage. And that's the purpose of the Financial Responsibility Act, and that's the coverage that we provide in our policy. What do I mean by that? If the named insured in this case was the employer, the named insured would be covered, and so would any permissive driver using his vehicle. But by virtue of the status of employment of the named insured, they would also have coverage in that capacity. It would be ridiculous to exclude the named insured if he was acting in his employment capacity, because if we take out the exception to the definition of insured, the result that we would get in this case, and something ignored by this appellate court that we argue in our briefs, is that the named insured then would be excluded from coverage by virtue of his employment status, by his own policy that he paid a premium for, and the permissive driver would have coverage by virtue of being a permissive user of the vehicle, because the permissive driver would not be the employer and would be entitled to coverage under our policy. And that would be an absurd result under our policy. And that's the purpose of the exception to the exclusion in our policy. So the issue before the court is whether or not that limitation clause, the classification of risk that we're not willing to take under a personal auto policy is appropriate under the statute. There is nothing in the statute that prohibits insurance companies from limiting this type of risk. It's no different from the pizza delivery exclusion that was upheld in Progressive, and limits insurance companies from doing that. And we've looked at and approved that by this court. The issue is whether or not you treat the named insured equally with that of the coverage that you provide to the permissive driver. Who would be a permissive driver then? The permissive driver in this case was the employee of BNA Auto. He was out test driving the car. Farmers recognized coverage for that individual, permissive driver, and provided coverage because he qualified as an insured person under the policy. What SECURE wants us to do is step in and take the vicarious liability of an employer, a respondent superior or principal agent. All this business risk is part of it. If the employer himself had been driving the car that was turned into his business to do whatever they were going to do with it, would he not have been covered in that circumstance? The individual would have coverage for his use of the vehicle. The employer, the company, would not. In that capacity, that is correct. And it's no different from the pizza delivery exclusion where the entire permissive driver and the named insured were excluded from coverage. The issue is whether or not you treat, under the facts and circumstances of each particular case, the named insured the same as the permissive driver for coverage. And in our policy, under each of those factual scenarios, you do. And the way that the court found the disparity of treatment is by looking in a factual vacuum and creating a hypothetical that cannot exist. They looked at the situation where we provide coverage for the named insured as an employer, but don't provide coverage for the permissive driver as an employer. And there's no requirement under the statute that we offer that coverage for a stranger to our contract. What is important is where we do provide coverage to our named insured, that we also provide coverage to the permissive driver, and we do that in our policy. And we've done it in this case, and we recognize coverage in this case. What we exclude from our policy is the commercial risk associated with a third party that is seeking coverage under our auto policy, a personal auto policy, that was not intended to cover these types of commercial risk or commercial exposure, which we believe is properly limited to the definition of who constitutes an insured under our policy. Unless the court has any further questions, I'll close my argument. Thank you. Good morning, Your Honors. May it please the Court, Mr. Worker. My name is John Malarczyk, and I'm representing Secure Insurance Company in this case. Secure is asking this Court to affirm the findings of the Appellate Court Second District. And I will explain the two issues that Mr. Worker explained to you in his position today, the first one being the jurisdiction. Can I ask a few questions about the jurisdiction before we begin? Please. I hope just the actual questions are either true or untrue. Was there ever a certification filed, ever filed in this case relative to the notice of appeal? I don't believe one was filed as it's defined as a certification of filing the notice of appeal. I believe I may have signed an affidavit in relation to my motion, I'm sorry, my response in the Appellate Court. That was long after the fact. Yes. The letter that was sent, well, I'm sorry, the letter that it was maintained was sent to the clerk. He had no certificate on it at all, did it? Not a formal certificate, no. Formal or informal. There was no document that was ever mailed to any place that conformed to the Rule 12B3? Not to all the provisions, no. Well, it didn't include the date, right? It did include the date. And now we're talking about the letter, aren't we? The letter by itself included the date, yes. June 16th. It included a date on the face of the letter. It did not include any statement that the letter was mailed on that date. It did not contain a certification that it was mailed on that date. It didn't even contain a certification that it was mailed at all? That letter, no, it did not. Okay, thank you. Okay. Just a couple follow-ups on that, Mr. Milarczyk. Does 12B3 provide the exclusive method for approving the data filing by mail? I don't believe it does. I believe the case law that has developed in this area, while it's very minimal, has looked beyond the simple 12B3 requirements. Okay, if we disagree with that proposition, would you agree that 12B3 provides a jurisdictional requirement to the appellate court? Would you classify it jurisdictional? I would not. No, I would classify Rule 12B3 as simply a procedural requirement as to how to mail a document. It doesn't have to be exclusively a notice of appeal that sets jurisdiction with the above court. It can be any document that's mailed by. Is there a jurisdictional requirement to agree with the appellate court that there can be, that this can be harmless, I think, as they called it? Well, no prejudice. Right. Does a harmless and no prejudice argument, I mean, is the only way that that holds water is if this court agrees that this was not a jurisdictional requirement? No, I don't think so. I think because 12B3 applies to the filing of any document, whether it be jurisdictional or not, this court doesn't need to find that it's jurisdictional in order to find harmless error and prejudice to apply. I think my question is really the opposite. If we find there is a jurisdictional requirement, how do we then agree with the appellate court's argument or opinion that there's no harm here, no foul, no prejudice? I mean, if it is jurisdictional, can we do a harmless error type of analysis if there's a jurisdictional requirement imposed on the appellate court is really my question. Well, I mean, I would simply agree with the appellate court and say, yes, you can. And I would refer you to the in-ray application of county collector case, which is a second district case cited by farmers in their original motion to dismiss. In that case, it was a 12B3 case on notice of appeal, very same issue. And in that case, they did not consider whether it was jurisdictional or not jurisdictional. What they considered was whether there was substantial compliance with 12B3 based on the documents that were filed. And while they didn't use, I think, the term harmless error, they looked for substantial compliance, which is exactly what the appellate court in this case did. They looked for substantial compliance with Rule 12B3. And strikingly analogous is the fact that in that case, there was a notice of filing and a certificate of service exactly the same as what I filed in this case. That document was filed, filed stamped, I should say, three days after it was supposed to be filed. And the court found that that notice of filing and proof of service on its face had substantially complied with Rule 12B3. And it had the same information that I had. Who was the notice of filing to? It was a notice of filing a certificate of service to the other counsel. To other counsel, not just the clerk. Correct. Notifying the other counsel that they had filed their notice of appeal and they were certifying that they were serving the notice of appeal on the other counsel. Had they filed a certification to the clerk of the court? They did not file it until several months later, dealing with a separate issue on an amendment of, I forget what kind of motion, but it was an amendment several months after the fact, certifying that, hey, we have a notice of appeal. And it was way back when, three, four months ago, I am certifying now that I did file it. And the court found that that was substantial compliance with the mailing rule. And in this case, my notice of filing again... Counsel, what we're talking about here is the mailbox rule, right? Exactly, which is what they were talking about in that case. Now, there is no period of grace for a person who chooses to file in the clerk's office in person, is there? No, there's not. If you walked in the next day, and I guess it would have been the 17th, you would just be out of luck. Correct. But we are suggesting, if you're using the mailbox rule, which, as I think counsel said, loosens it up, you can have substantial compliance and you'll be okay. That's correct. That is my position. Are you in any way indicating that you concede that there was at least in some regard a technical violation of the rules? I will concede that. And is there some point at which a technical violation becomes so egregious that it should divest the appellate court of jurisdiction or not allow it to divest with the appellate court? And if so, where is that line? Well, I'm not sure where that line is. All I know is from the very limited cases, I believe I have crossed that line into substantial compliance. We'll talk about that for a moment, if we can. When the appellate court said harmless error, they observed that what was missing from the letter was the time that the letter was mailed. And I take it from that the time of day? Correct. What we have in addition to the time of day, as we mentioned earlier, was the date that it was mailed, right? Okay. It has to have a copy of the front of the envelope. I don't think that's required under 212B3. Well, it has to recite what the front of the envelope is on the certification. It has to recite the address to whom it was sent, yes. It has to demonstrate what the postage was, is that correct? Postage prepaid. Postage prepaid, who mailed it. Correct. And where they mailed it. None of those things are anywhere on the letter that is apparently the saving document or proposed as a saving document. Much of that information is on the letter. What's not there is the certification of those things. Let's take a look at the letter. What do you maintain is on the letter in that? The date? The date is listed on the top of the letter is June 16, 2006. Correct. It doesn't say anything about it being the date of mailing. It does not specifically identify it as the date of mailing. I don't mean to push you too hard. I'm not here to make it difficult for you. But it just says June 16, 2006 and that date clearly could have been put on there at any point. Sure. And it doesn't indicate anything about mailing. No. It doesn't indicate anything about where. Where it was mailed to or from. Where it was mailed from or who it was mailed by. Correct. My only point was and I'm not trying to you call this letter the saving document. I don't pretend to identify that as the saving document. Without the letter, we'd have nothing at all. Without the letter, we still have the notice of filing and certificate of service in which it's indicated that I filed the notice of appeal with DuPage County Clerk on June 16, 2006 with a certification that I served those documents on Securus Council on June 16, 2006. That's been said over and over again. I'm sure you're tired of hearing it. But that was a certification that was mailed to council, not to the circuit court. Right. And what I'm trying to do is take all of the evidence, put it together and make it presentable to you that it was of all the factors looking at them together that it is a substantial compliance with the rule. That's my point. I am, as I said before, conceding that the certification of those items was not present in either of the documents filed. Back to our lawyer who goes to the clerk's office. Substantial compliance doesn't save him, does it? I'm sorry? We're going to go back to the lawyer who goes to the clerk's office to file a notice of appeal. Substantial compliance doesn't save that situation, does it? Not in that situation. But the mailbox rule, as this court has found, loosens up, as counsel said, the requirements. Because in I think it was the Harrisburg case, they noted that small firms have difficulties getting to the clerk's offices wherever they may be. And that allows the mailbox rule to come into effect. And the Morse case, which I want to cite, M-O-R-S-E, cited the Rydell Supreme Court supervisory order as indicating that it interpreted as doubts regarding filing, mailing, should be resolved in favor of review before an appellate court so that the merits of cases can be decided. And that is consistent with the Curtis case and our case in the appellate court in which they looked for things like harmless error and prejudice because they want to resolve all doubts in favor of a review before an appellate court of the substantial issues, substantive issues, which is our position here today. Let me just follow up on that on Justice Freeman's earlier question on the other side. Is there any way we could, if we disagree with you and we feel that it was a jurisdictional failing, is there any way we could get by that and go to the merits of the case without being an advisory order? Without it being advisory? I don't know. Now on to the second issue, which is before you today. Before the second issue, you're going to get there, I know. But the cases cited by the appellate court regarding this harmless error theory, did they involve jurisdictional issues? The instant case really deals with whether the notice of appeal was timely filed or not, right? Correct. Which what we've been talking about today is that a jurisdictional deficiency. I think there were two or three cases, appellate cases, cited by the appellate court in their opinion to justify this harmless error analysis. Did those cases deal with a jurisdictional issue? Frankly, I don't recall if those cases cited did. There were at least two cases, one of which was the Enray County Collector case that I cited, that dealt specifically with it. That case, again, was cited by Secura in their motion, I mean Farmers, in their motion to dismiss, but the appellate court did not cite it. The appellate court cited Curtis and Plank, which were cases I cited. They also cited Ingrassia versus Ingrassia. I believe at least two of those dealt with post-trial motions that had been filed. Again, 30 days was the deadline. It wasn't a jurisdictional issue per se. It was still the 30-day requirement and timely notice requirement, but I don't know if it dealt specifically with jurisdiction. Thank you. Now to the second issue. We'd love to hear about the second issue. What's taking you so long to get there? I just forgot it. Here we have an insurance coverage issue. Is Mr. Muzikowski insured under the farmer's policy? Now, the farmer's policy says, under the definition of insured, any person or organization other than you or a family member who is the employer of any insured person, that is not an insured under their policy. Well, you cannot hide inequities in coverage in a definition. This court has stated in Smith and Progressive that inequities in coverage are disallowed. It's a matter of public policy. Farmers has hidden an inequity in their definition. It's not an exclusion like in Smith, the business use exclusion, or the food service exclusion like it was in Progressive. This is in a definition, and what they're doing is they're excluding employers who are permissive users. Is this, taking your position, doesn't this really increase the risk for the farmers? It doesn't increase it one iota. It does not? It does not. Because there is absolutely no cost to farmers to defend an employer on a respondent liability theory for the acts of his employee. They are in the same exact position, an employee and an employer. It costs them nothing. And countless times employers are sued and not the employee for one reason or another, one being a plaintiff's attorney may like that there's a individual defendant. It's a mind game with a jury, so to speak. In that case, if we take farmers' position that an employer of an employee or an insured person is not covered because he's not the named insured, where's coverage for that defendant? It frustrates the public policy as stated by this court that there should be coverage available, secure payment for damages is the policy. And if you have a situation where an employer is sued for the acts of his agent, employee, under the farmer's policy, the employer is not covered, so there is no insurance. And farmers suggest in its brief that it's important to point out that in this particular case, Secura insured the employer and had coverage, so there is no concern about public policy. But that is nothing more than a fortuitous circumstance of this case. In every other case, in this case included, you cannot just assume that an employer is going to have commercial liability auto coverage because that's not mandatory in this state. Sure, there's a maybe you want to create an incentive, but this court stated in State Farm v. Smith that that incentive is not the public policy of this state. The public policy is securing payment for damages. State Farm argued that the Delaware Supreme Court and their public policy should be the public policy of this state. This Supreme Court said no. So in that case, in this case, that's irrelevant, so there is no increased risk to farmers. And farmers talked about taking on an additional commercial exposure here. They take on a commercial exposure just by insuring permissive users, because Mr. Dill in this case was involved in a commercial business. It was a Meineke repair shop. That's a commercial risk. They insure Mr. Dill under their policy. That's a commercial risk they have to bear, because this Supreme Court says permissive users must be covered. Does taking your position result in the kind of perverse result public policy-wise that it would discourage businesses from having commercial liability insurance? No, not at all. Because they get covered if they send their guy out to drive the car and have an accident, then they get covered, right? Well, that's true, but this Supreme Court has already said that the more important public policy is securing payment for damages, not creating an incentive for employers to have commercial auto liability insurance. But shouldn't we encourage everybody to have adequate coverage? Sure, sure. Why not? The problem in this policy and this provision isn't even that they would defend or cover employers. It's that inequity that I talked about at the beginning. Because what they've done is they've allowed coverage for named insureds who are employers, but not permissive users who are employers, and that's the crux of this appeal. If they didn't have that inequity, if they barred coverage for all employers, we wouldn't be here today. Because they're treating named insureds and permissive users equally. The problem comes when they carve out this exception plain on its face, other than you are a family member. They've created that exception. So in a case where the named insured has his own car and he's got his own business, and in that business he lends his car to an employee for company business, and he gets in an accident and the plaintiff sues the employee who is driving the car and the named insured employer in his capacity as employer. Under the farmer's policy, the named insured is covered as an employer because he's exempted from this exclusion. That's the inequity. And that's why, in our position here, this inequity has now eliminated coverage for the permissive user, Mr. Muzikowski. And that's the very inequity that Progressive and Smith found to be against public policy. We talked... And I have mentioned it already, about the fact that farmers... The situation I just described, the great inequity that occurs with covering named insured and not permissive users. And the point about what I explained to Justice Garmon is that there is no added risk, commercial or otherwise. There is no perverse result that's going to occur from this, because all farmers had to do was exclude coverage, exclude the exemption to both named insured and permissive users who are employers, and we'd be done. But they didn't do that, and that's where the issue really lies. And my last point is, we didn't talk about the statute itself at all. And it's our position, Secure's position, that under the statute, you have to insure both the user and the person responsible for use. The language of the statute does not say either one or the other. It says any other person. And if you stop it there, as I explained in my brief, it's everybody else in the world. But there's qualifications of using or responsible for the use. Those are nothing more than qualifications to describe any other person. It's our position that the statute itself requires both a user and a person responsible for the use to be covered in addition to the named insured. Thank you again for your time, Justices. And I'll turn it over to the Court on both issues. I would like to start with the acknowledgement made by counsel that the exception that we have in our policy is a problem. Without the exception for the named insured, they acknowledge that the removal of that classification of risk would be okay. So their problem is because we provide coverage to our named insured as an employer that creates this disparate treatment. I remind the Court that under the facts and circumstances of this case, that exception does not apply. The inclusion of that exception does not create any disparity under the factual scenario of any case. If the named insured is the employer, the permissive driver of the vehicle has coverage under our policy. In fact, in the example, the hypothetical that counsel gave, there's coverage for both the named insured and the permissive driver. In the case where the named insured is the employer, he has coverage. And the permissive driver using the vehicle with his consent, even if he's an employee of the named insured, has coverage. I thought his argument was that if the permissive user is an employer, and he has coverage, in other words, if the permissive user had been Mr. Muzikowski, he would be treated differently, because he's an employer and not covered. By definition, though, in our policy, the permissive user would have coverage, because he's the person using the vehicle with consent of the insured. The employer, the entity, would not have coverage. Well, it might not be a corporate business. It may just be a Ma and Pa store. And under that scenario, the permissive user using the vehicle with permission and consent, by statute and by definition, in our policy, is covered. And there would be no disparity, because the named insured in that scenario and the permissive driver would have coverage. Even if he was an employee of a small business? Right. The employment unit, the entity, would not have coverage. Correct. That other entity, that other third person that they're seeking coverage for under our policy, that we exclude. That risk. So the insured, the named insured, would not be able to put his car in any agency that would fix it, would try to repair it, if it was more than one person? The named insured could have anyone fix their car, and anyone that's fixing his car, that's using the vehicle. Which is exactly what the statute says. The employer, Mighty Key Muffler or Midas or whatever, those entities, those corporate entities, do not have coverage when they're sued in their corporate capacity under our personal automobile policy. And that's what SECURE is asking for in this case. And we limit the definition of who is an insured, and we can place limitation clauses in our definition. There is nothing improper with that. So we first must decide who is a person responsible for the use of such a motor vehicle. Is that the first definition we have to decide? We believe that it modifies the person using the vehicle, person or responsible for use. That the statute requires coverage for the named insured or a singular person using or responsible for use of the vehicle, which is what we provide coverage for. The use of the vehicle, as this Court has recognized the purpose of that statute in Progressive, is to provide coverage for the named insured and anyone using the vehicle. Case after case, analyzing the statute has recognized that. But the named insured doesn't entrust the car to the person who's going to be repairing it. They entrust it to the agency to whom they bring it, the person responsible. Right, but the focus of the statute is on the use of the vehicle. It's not from the vicarious liability on the principal agent theory, respondeat superior, or that commercial risk that's insured under a separate commercial policy that SECURA insured the B&A automobile. There's no guarantee that that's going to be the situation, though, is there? In this instance, there happens to be a commercial policy, but there wouldn't have to be. It depends. If it's an auto business where they have autos, there's mandated coverage for commercial autos in this state, just like there's mandated coverage for personal autos. So I disagree with counsel's statement that a business that involves commercial auto risk does not, is not required to have that coverage. Mr. Worker, what if my neighbor's a mechanic and I ask him to work on my car? I'm insured by farmers. And he takes your car out for a drive, he is covered under our policy by definition. Because he's a permissive user? Absolutely. And he is treated exactly the way our named insured is. What farmers was trying to avoid in their policy is where the named insured himself is the employer, and he lets somebody else use his vehicle. He would be excluded if we take out the exception under his own policy, and the permissive driver would have coverage under his policy. And that makes absolutely no sense. But under Justice Kilbride's example, if his neighbor was incorporated, the corporation would not be. The corporation itself, if it was sued in a corporate capacity, would not have coverage for that. Correct. And that's that classification of business risk that we're trying to exclude. And in that case, in Justice's example, both the named insured would not have coverage for that corporate entity, nor would the permissive drivers. We're treating them both the same. Likewise, if the named insured was the employer, both the named insured and permissive driver are treated exactly the same. So you have to look in the exclusion, exclusionary language contained within the definition, under the facts and circumstances of each case. You cannot look at it in a factual vacuum, as the Second District Appellate Court did, to find this hypothetical disparity that doesn't exist. Well, are you excluding the risk, or are you just excluding the scenario where there's other insurance? No, we're excluding the classification of business risk for this type of employment liability that we're not willing to accept under a personal auto policy. I'd like to follow up on a question that Justice Garmon raised with regard to the cost in this. Is there an additional cost? Well, yeah, when you add an additional insured to the policy, you're adding an additional defense obligation, and that creates problems in the defense of a case. It doesn't expand coverage in the case, so you have multiple insureds covered under a single policy with a single limit. Now, with regard to the defense of that case, it may make it more difficult to settle that case, on behalf of the named insured, who sued for an entrustment issue, maybe, with regard to the permissive drivers. The driver who's actually negligent for the accident, and now you have this extraneous third party that's being sued for vicarious liability, responding at superior, that may feel that they don't have liability for negligent training or supervision for those issues, which are extraneous from the use of that vehicle and the intent of that statute for that motor vehicle accident, which may add cost of defense, which may prevent settlement of the case, which may increase the chances that case goes to trial, rather than settlement. Those are additional considerations that would add burden in defending those kinds of cases by adding third party strangers to our contract that were not intended to be covered by a personal auto policy. With regard to the jurisdictional issue, we're not aware of any cases where this type of case is covered. This court has decided that the appellate court can use substantial compliance with the notice of filing of a notice of appeal to bestow jurisdiction upon itself, and we have cited no cases. The closest cases that we're aware of are the cases that we cited, Roth, where the court held the affidavit was insufficient and refused to hear a petition for leave to appeal. The court was able to determine what kind of fire, that distinguished it, based on this court's supervisory powers and rule-making authority to take discretion and consider substantial compliance with its own rules. It doesn't bestow that authority on the appellate court, and I do think it's a jurisdictional issue, and the notice of filing, I mean the notice of appeal and the filing date bestows jurisdiction in the case. If the notice of filing is insufficient, when you show up to the circuit court of DuPage County a minute before the court closes and they refuse to take that notice, it's done. The relaxed standard that I was referring to is allowing a system where you can certify that you in fact completed the task of mailing a notice which constitutes filing by certifying that you did it. And there's three requirements or so, and they're contained within the notice of filing that's secure of assent to farmer's counsel in this case. Mr. Worker, I think you said a minute ago that this, including the employer in this case, would not provide any additional coverage, but it would provide an additional burden of defense. Taking this case, the Hennahan, the person who sued, would not benefit in any way by having B and A covered by insurance in this case? Is that your position? Right. No matter how many people are insured under our policy, if it's a single occurrence, there's only one limit that applies to all insureds. So the only issue here is who pays if farmers are secure? Exactly. On a primary defense obligation going forward, and really that was the issue in the underlying case. They want a reimbursement for their defense cost of defending their named insured in that litigation. Should that factor into, if we consider policy on making sure that there's coverage for every incident, should that factor into our consideration? I believe that the purpose of the statute is to provide coverage for the named insured and people using their car for the protection of the public as this Court set forth in Progressive. So, you know, in consideration to Justice Garment's question concerning the additional cost, I mean, it is an additional cost and additional consideration and an additional burden, which may actually add a negative effect if this Court does not consider it. So I think it's important that this Court finds that we're obligated to provide this coverage to these outside entities, these third parties, that are not intended to be covered under this personal type auto policy. Thank you, counsel. Thank you.